IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED IN OPEN COURT
DATE: 10/18/05
TIME: 9:35 AM
INITIALS: JPW

| | |
|---|---|
| JAMES I. BURLISON<br>RODNEY L. WAITS<br>BUFORD O'NEAL TANKERSLEY<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendants. | No. 2:04CV2597 DP |

## JOINT PRETRIAL ORDER

Come now the Plaintiffs and Defendants and jointly submit this their proposed pretrial order and would show to the Court:

### JURISDICTIONAL QUESTIONS

Plaintiffs assert that they are, as a matter of law, owners of title to an easement of ingress and egress across the Defendant's lands. Thus, 28 U.S.C. §2409a provides this court with jurisdiction. There are no jurisdictional questions.

### PENDING MOTIONS

Plaintiffs' Motion for Summary Judgment is pending.

### PLAINTIFFS' CONTENTIONS

Plaintiffs contend that they own title to an easement of open ingress and egress over and through the lands of the United States by use of a "particular access road" that was historically

1

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 10-18-05

used by Plaintiffs' predecessors in title as recognized right by Defendant's predecessors and by Plaintiffs to access their lands known as the Rorie tract. Title to this easement is specifically reserved to the owners of the Rorie tract in the deeds obtained by the United States. The deed from the Rice family to the United States was delivered to the United States on the condition that the United States agreed that the "particular access road" used by the Rories to access the Rorie tract would be recognized as a reservation/ encumbrance on the title transferred from Rice to the Defendant. By its acceptance of the delivery of the deed, the United States recognized and agreed to this reservation to its title.

Since the United States did not acquire title to the easement right reserved to Plaintiffs, it may not, as a matter of law, interfere with or obstruct Plaintiffs' enjoyment of their free right of ingress and egress. The Plaintiffs' easement is not and never has been a part of the Defendant's real property interest nor is it "within the System" regulated by the Defendant.

The government claims that it may prevent Plaintiffs' free use of their easement over lands purchased by the government even though the delivery of the government's deed was expressly made "subject to" the government's recognition that the title to its lands was encumbered by and subject to the "reservation" of the "particular access road" used by the Rories to access their property. In short, Plaintiffs contend that the title of the United States to the lands it owns is subordinate to the easement of the Plaintiffs. The government has no jurisdiction and cannot regulate real property rights it does not own. The government did not grant to the Rories or to their co-tenants an easement right. That easement right existed before and was reserved from any title the United States purchased. Since the Defendant did not hold title to nor grant the easement, it may not restrict its use by Plaintiffs for lawful activities.

The government's argument that it may "regulate" the use of real estate rights over which it holds no ownership is based upon a spurious premise. Clearly, Congress gave the Department of Interior power to regulate traffic, etc. over real estate to which it holds title. It did not, however, grant such power over real estate to which it does not hold title. Indeed, the regulations found at 50 CFR §§25.11, 25.31 et seq. apply "only to the extent" of Defendant's property interest. Here, the United States never owned the rights or title to the easement of ingress and egress held by Plaintiffs, their co-tenant, and their predecessors in title and the United States' title to the refuge property is burdened by and subordinate to that easement..

Alternatively, Plaintiffs claim that the right of open and free ingress and egress to their lands has been established by: (1) prescription – use of the roadway and recognition of the right to use such roadway by Defendant and its predecessors in title for more than 50 years; (2) necessity – without the right of ingress and egress, the Plaintiffs' lands are admittedly landlocked; (3) by operation of law, both common law and statutory; (4) by implication since the "particular access road" connects the Rorie tract to the public highway and since the Sullivan tract, and Rice tract (now owned by Defendant) through which the road passes were part of a common tract; and/or (5) by dedication.

Plaintiffs seek to have this Court declare their title to the open and free easement of ingress and egress over the road in question and to establish the respective rights of the parties.

Before 2002, neither Defendant nor any of its agents ever attempted, by letter, permit, or otherwise to prohibit the inholder owners of the Rorie tract from having access to their properties over the "particular road" referenced in Ashley's letter of January 11, 1993 to Roseann R. Christ,

3

Senior Realty Specialist, Refuge and Wildlife, Department of the Interior. (Affidavit of Milton B. Rice, March 23, 2005, ¶¶ 6, 7, 8, 9, 10, 11, Ex. 3).

## DEFENDANT'S CONTENTIONS

1. The Defendant contends that the use of the dirt road in question by the Plaintiffs' predecessors in title was not of the character required to create an easement by prescription, but rather said use was with the permission of Defendant's predecessors in title.

2. The Defendant contends that the dirt road was never dedicated or maintained by a governmental entity and that the road was not used by the general public, but rather was used only by the owners of the land through which it passed in order to gain access to a public road.

3. The Defendant contends that the requisite unity of ownership of all of the property required to create an implied easement or an easement by necessity did not exist in 1941 at the time of the conveyance of the property, now owned by the Plaintiffs, from Myra Bacon Rice to Elvie and Lena Rorie.

4. The Defendant contends that the circumstances surrounding the sale of property from the Rice family to the United States in 1993 did not result in the creation of an express reservation of an easement in favor of the Rorie tract.

5. The Defendant further contends that the National Wildlife Refuge System Administration Act and the National Wildlife Refuge System Improvement Act of 1997 preempts state law relative to potential easements over refuge property or alternatively authorizes the U.S. Fish and Wildlife Service to reasonably regulate the use of such easements consistent with the mission of the National Wildlife Refuge System. Finally, the Defendant contends that the Plaintiffs failed to exhaust their administrative remedies relative their efforts to obtain a

4

special use permit for access over Refuge property during the period of November 15, 2004, through March 15, 2004.

## UNCONTESTED FACTS

1. It is conceded that the Rorie tract owned by the Plaintiffs herein is landlocked. (R. Cook Dep., p. 55, Statement of Assistant United States Attorney Vanasek conceding that the land in question owned by the Plaintiffs is landlocked).

2. The Defendant has no basis to contest the fact stated in Milton Rice's affidavit that "Mr. and Mrs. Rorie used a dirt road across [Milton Rice's] parents' remaining farmland located immediately north and adjoining the Rorie farm. This roadway [the one marked in pink on Exhibit 5 identified by Mr. Cook as being the roadway leading across the refuge to the Rorie tract] was always and continuously used for ingress and egress by the Rories and their successors in interest to and from the public road." (Cook Dep., pp. 165, line 22 - 166, line 8).

3. The deeds attached to Plaintiffs' More Definite Statement as Exhibits A through I and K through L are certified copies of the deeds recorded in the Register's Office of Lauderdale County, Tennessee, are authentic and are admissible in this cause without further authentication. (Rules 902, 1003, 1005 of the Federal Rules of Evidence).

4. Plaintiffs and their predecessors had and have no means to access their lands except by use of the historic road passing through the refuge lands formerly owned by Sullivan and Rice. (Affidavit of Sullivan; U.S. Ex. 5; Affidavit of Rice, March 23, 2005, ¶4; Concession of the Defendant, Dep. R. Cook, p. 55).

5. Prior to December 17, 1887, the Plaintiffs' and Defendant's lands were a part of lands held in a common unity or ownership by A. Lea & Co., as shown by the Decree of the Lauderdale County Court found in Book N, page 477 in the County Court Clerk's office of Lauderdale County, Tennessee, a certified copy of which is filed herein and is authentic and admissible in evidence without further authentication. (Admission of Defendant to Plaintiffs' Request Nos. 1, 6, 7, 10, 11, 12; Rules 902, 1003, 1005 of the Federal Rules of Evidence).

6. Plaintiffs' and Defendant's lands were once owned by the same owner and the Sullivan, Rice and Rorie tracts were a part of land owned by that prior, common owner. (Affidavit of Milton B. Rice, March 23, 2005, ¶12; Admission of Defendant to Plaintiffs' Request Nos. 1, 6, 7, 10, 11, 12).

7. On March 17, 1888, by court decree found in Book N, page 556-561 of the Lauderdale County Court Clerk, what later became the Rice tract and the Rorie tracts were separated from other of the commonly held lands (including the Sullivan tract) and were assigned by the decree to the Bacon family who received 1/3 of lands of A. Lea & Co., a certified copy of which is filed herein and is authentic and admissible in evidence without further authentication. (Rules 902, 1003, 1005 of the Federal Rules of Evidence.)

8. By 1928, Myra Bacon Rice was the owner of both of the Rice and Rorie tracts. In 1901 lot 3 of the Bacon tract was partitioned to Myra L. Bacon and Lot 4, partitioned to her brother in 1901, Book U, page 492-493, was acquired by her in 1928 by deed from Battle M. Brown Co. At this point the ownership of what would become known as the Rorie tract, and the contiguous Rice tract were owned by Myra B. Rice. The Rorie tract is a portion of Lot 4 to the south. The Rice tract is a portion of Lot 4 to the north and of Lot 3. See map attached to the

6

1901 judgment of partition recorded at Minute Book U, page 469 for the location of lots 3 and 4 (Exhibit of Defendant, No. 53).

9. Myra B. Rice and her husband, R. E. Rice, deeded the Rorie tract to Elvy Rorie and wife, Lena Rorie, on the 11th day of September, 1941 as shown in Book F-4, Page 205 of the Register's Office of Lauderdale County, Tennessee, a certified copy of which is filed herein and is authentic and admissible in evidence without further authentication. (Rules 902, 1003, 1005 of the Federal Rules of Evidence). Thus, the title to the once common tract was separated.

10. Until the Rorie tract was separated from the Rice tract in 1941 by the deed from Myra Bacon Rice, et ux, to Elvy and Lena Rorie found in Deed Book F-4, page 205, of the Register's Office of Lauderdale County, Tennessee, the contiguous Rice and Rorie tracts were a part of the lands owned by Myra Bacon Rice. These lands were south of that section of the A. Lea lands partitioned to M.M. Lindsey in 1901.

11. The Rorie tract passed to the three children of Elvy Rorie and Lena Rorie, upon the latter's death, namely, Conrad J. Rorie, Virginia Rorie Wright and Elvy Rorie, Jr., who held the lands as tenants in common. Elvy Rorie, Jr. farmed the lands for the benefit of the co-tenants until his death on December 30, 1998. His one-third interest in the lands were devised to his three children, Elvy Rorie, III, Margaret Rorie Sansom and Susan Rorie Davis. The two daughters deeded their 2/9 interest in the lands to C & L Farms, Inc. by warranty deed dated May 14, 1999 and found at Book 416, Page 305 of the Register's Office of Lauderdale County, Tennessee. (Certified copy filed herein).

12. Conrad J. Rorie and the heirs of Virginia Rorie Wright deeded their interests to Plaintiffs. As a result, Plaintiffs are the owners along with others as co-tenants, in fee simple,

7

absolute, of a tract of land located in Lauderdale County, Tennessee, as a result of a series of warranty deeds found recorded in the Register's Office of Lauderdale County, Tennessee as follows:

> Record Book 479, page 468
> Record Book 479, page 471
> Record Book 479, page 474
> Record Book 479, Page 486
> Record Book 479, page 477
> Record Book 479, Page 480
> Record Book 479, Page 483
> Record Book 474, Page 58

13. Plaintiffs obtained ownership rights of a 2/3 interest in the lands described in said warranty deeds in August and November of 2002 by purchase.

14. The Plaintiffs' title to the Rorie and that of the Defendant, United States of America to the Rice tract, described hereinafter originate from a common owner, Myra B. Rice as referenced in paragraph 8 hereinabove.

15. From 1941 forward, the Plaintiffs and their predecessors used the road through the property of Defendant's predecessors in title (Shoaf, Sullivan, Rice), to access their lands. (Affidavits of Rice and Sullivan previously filed; Affidavit of Milton B. Rice, March 23, 2005, ¶8).

16. The Defendant, United States of America, purchased, in fee simple, a certain tract of land adjacent to and north of the Rice tract in Lauderdale County, Tennessee. That purchase from the Sullivans was made pursuant to a deed found in Deed Book 250, Page 196, dated May 31, 1985. That deed provides, in pertinent part:

> And the party of the first part does covenant with the United States
> of America that they are lawfully seized and possessed of said land
> in fee simple, have a good and lawful right to convey it, and that

8

said land is unencumbered SUBJECT, HOWEVER, to the following:

(1) **Existing easements** for canals, ditches, flumes, pipelines, railroads, **public highways and roads**, telephone, telegraph, power transmission lines and public utilities. (Emphasis added.)

(Deed Book 250, page 198 of the Register's Office of Lauderdale County, Tennessee).

17. On October 5, 1992, the United States Department of Interior notified Milton B. Rice that purchase of the Rice tract by the Defendant's Department of Interior was approved. (Affidavit of Rice, March 23, 2005, ¶7, Exhibit 1).

18. On September 2, 1992, an Agreement For The Purchase of Lands was entered into between the Rice family and the Defendant. (Affidavit of Rice, March 23, 2005, ¶7, Exhibit 2; Dep. R. Cook, Ex. 10).

Paragraph 2 of the Agreement for the Purchase of the Lands reads:

> 2. The vendors agree that they have full right, power, and authority to convey, and that they will convey to the United States the fee simple title thereto clear, free and unencumbered, **except subject to the following easements or reservations**:
>
> Existing easements for canals, ditches, flumes, railroads, public highways **and roads**, telephone, telegraph, power transmission lines and public utilities.

(Affidavit of Rice, March 23, 2005, ¶7, Exhibit 2; Dep. R. Cook, Ex. 10).

19. Before the deed from Rice, <u>et al</u> to Defendant was delivered, the Rice family's attorney, Barrett Ashley, wrote in a letter dated January 11, 1993, to Roseann Christ, Senior Realty Specialist, Refuge and Wildlife, United States Department of the Interior and delivered certified mail, return receipt requested, that:

9

. . . .

> At that time, **we discussed the Rice family's concern that the access road to the Rorie tract remain an easement or reservation as to the title. You agreed that would be done.**
>
> **Accordingly, we have construed Paragraph 2 of the Sales Agreement, which refers to easements or reservations, to include that particular access road in the reference in that language to "roads". . . .**
>
> **Upon this understanding, Mr. Rice has authorized the delivery of the deed** conveying this property to the United States Department of the Interior purporting to grant a title unencumbered, except as set forth in said Agreement and as above referenced.

(Affidavit of Rice, March 23, 2005, ¶7, Exhibit 3; Dep. R. Cook, Ex. 9).

(Emphasis added.)

    20. Randy Cook, Defendant's agent, wrote Mr. Ashley a letter dated January 13, 1993, which stated:

> **It is the policy of the U.S. Fish and Wildlife Service to afford inholders with reasonable access to their property. We do not view the deed from Mr. Rice to the United States as infringing upon any right that might be held by Elvy Rorie, Jr.** We have discussed this with our Counsel in the Solicitor's Office in Atlanta and he has advised us that **this letter should serve to satisfy Mr. Rice's concerns.** Therefore, we are hopeful that Mr. Rice feels confident that this matter is resolved. (Emphasis added.)

(Affidavit of Rice, March 23, 2005, ¶7, Ex. 4; Dep. R. Cook, p. 8)

10

21. According to Milton B. Rice, the deed from the Rice family was signed and delivered to the Defendant subject to the easement for the road reserving to the Rories their right to continue to have access to the Rorie tract. (Affidavit of Rice, March 23, 2005, ¶¶ 3, 6, 7, Exs. 2, 3, 4, 5).

22. When the 1991 documents, each entitled "Special Use Permit" were issued to the Rories and Milton B. Rice, Defendant's agent Marvin L. Nichols mailed the permits with an accompanying letter which explained that the key referenced in each document was being "issued to you for access to your inholding south of Lower Hatchie Wildlife Refuge." (Affidavit of Rice, March 23, 2005, ¶¶ 7, 9, Exs. 6 and 7).

23. Mr. Nichols also stated, "We <u>ask</u> you to use discretion in lending the key to other parties using the refuge as access to the inholding." (Emphasis added). (Affidavit of Rice, March 23, 2005, ¶¶ 7, 9, Ex. 7).

24. The only access to the Rorie tract is by the road across the Rice tract which is now a part of the Lower Hatchie Wildlife Refuge. (U.S. Ex. 5). Without use of the road, the Rorie tract is landlocked. (Affidavit of Milton B. Rice, March 23, 2005, ¶¶4, 13; Concession by Defendant, Dep. R. Cook, p. 55).

25. Since 1941 the Rories and their successors in title have "always and continuously used the roadway across the Rice tract to access the lands which are otherwise landlocked."

26. That the roadway has been in existence even longer is shown by the Defendant's United States Corps of Engineers maps, Exhibits P through Z attached to Plaintiffs' More Definite Statement. This Court may take judicial notice of the United State Army Corps of Engineer's quadrangle maps.

27. Plaintiffs' lands and those of the Defendant lie near the convergence of the Mississippi and Hatchie Rivers and what was historically known as the town or community of Fulton make up a portion of those lands. Fulton, at one time, was a thriving river community with multiple dwellings and several businesses and churches which were built along a public roadway known as the Fulton Road, at various times a/k/a Shoaf Road/Ford Prudhome Road and the "road" in question connects with Fulton Road.

28. The road over which Plaintiffs' claim an easement traversed and traverses Defendant's properties and is clearly depicted on old maps and aerial photos. Its course traveled generally along the old river bluff above where the Mississippi River once flowed (now an elongated narrow lake) to the bank of the Hatchie River.

## CONTESTED ISSUES OF MIXED FACTS AND LAW

1. Did the United States Department of Interior, Fish & Wildlife Service at any time prior to November of 2002 place Plaintiffs or their predecessors in title on notice that the United States claimed an interest or right adverse to the Rorie tract owners' easement right of ingress and egress? If so, when? How was this notice given?

2. Do the Plaintiffs and their co-tenants hold title to an easement of ingress and egress by means of that "particular access road" by reservation to the title of the Defendant?

3. Do the Plaintiffs and their co-tenants hold title to an easement of ingress and egress by means of that "particular access road" by

      (a)    prescription?

      (b)    operation of law?

      (c)    implication?

12

(d) dedication?

4. Do the regulations found at 50 CFR §§26.21, 26.22, 26.25, 26.27 and 28.31 governing the entry upon national wildlife refuges provide authority to Defendant to restrict Plaintiffs' enjoyment of the easement of ingress and egress to which they hold title as a matter of law since those regulations apply "only to the extent that the property interest held by the United States may be affected?" 50 CFR §25.11.

## SUGGESTED STIPULATED MATTERS

The authenticity and admissibility of:

(1) All deeds and decrees produced in discovery or filed herein;

(2) All aerial photographs;

(3) All maps produced herein except for Dickinson survey (Ex. 3 to Cook's deposition);

(4) Certain correspondence produced herein to be agreed upon and designated by parties prior to trial;

(5) All government files: and

(6) Photographs of the area.

## EXHIBITS OF PLAINTIFFS

The exhibits anticipated to be introduced by Plaintiffs are as follows:

1. Admissions of the United States in response to Plaintiffs' Requests for Admissions, Nos. 1, 6, 7, 11, 12, 22, 23, 24, 25, 28, dated April 20, 2005.
2. Aerial photograph (Exhibit J to Plaintiff's More Definite Statement)
3. Affidavit of Milton B. Rice dated March 23, 2005 and attachments thereto.
4. Affidavit of Milton B. Rice dated May 14, 2004.
5. Affidavit of Cyburn H. Sullivan, III dated November 23, 2004.
6. Agreement for Purchase of Lands dated September 2, 1992 between Milton B. Rice, et al and the United States of America (Exhibit 10 to Cook's deposition)
7. Ashley, Ashley & Arnold's letter dated January 11, 1993 to Ms. Roseanne R. Christ of the Refuges & Wildlife, United States Department of the Interior (Exhibit 9 to Randy Cook's deposition)

8. Certified decree located in Book N, Page 477 of the County Court Clerk's Office of Lauderdale County, Tennessee.
9. Certified decree located in Book N, Page 556 of the County Court Clerk's Office of Lauderdale County, Tennessee.
10. Deed recorded in Record Book 479, Page 480 of the Register's Office of Lauderdale County, Tennessee.
11. Deed recorded in Record Book 479, Page 483 of the Register's Office of Lauderdale County, Tennessee.
12. Deed recorded in Record Book 479, Page 486 of the Register's Office of Lauderdale County, Tennessee.
13. Deed recorded in Record Book 479, page 474 of the Register's Office of Lauderdale County, Tennessee.
14. Deed recorded in Record Book 479, page 471 of the Register's Office of Lauderdale County, Tennessee.
15. Deed recorded in Record Book 479, page 477 of the Register's Office of Lauderdale County, Tennessee.
16. Deed recorded in Book U3, Page 192 of the Register's Office of Lauderdale County, Tennessee.
17. Deed recorded in Record Book 474, Page 58 of the Register's Office of Lauderdale County, Tennessee.
18. Certified deed located in Book 183, Page 183 of the Register's Office of Lauderdale County, Tennessee.
19. Certified deed located in Book F-4, Page 205 of the Register's Office of Lauderdale County, Tennessee. (Exhibit 21ID to Cook's deposition)
20. Deed to Real Estate recorded in Record Book 416, Page 305 of the Register's Office of Lauderdale County, Tennessee.
21. Deed recorded in Record Book 479, page 468 of the Register's Office of Lauderdale County, Tennessee.
22. Deed recorded in Book 331, Page 642 of the Register's Office of Lauderdale County, Tennessee (Exhibit 11 to Cook's deposition).
23. Survey of Milton Thornton dated October 1965 (Ex. 1 to Cook's deposition)
24. History of Lauderdale County, by Judge Colin P. McKinney of the Tennessee Supreme Court, private collection, Lauderdale County Library.
25. Letter from Milton B. Rice to Hatchie National Wildlife Refuge dated February 2, 1993 and attached map.
26. Letter from Marvin L. Nichols of Hatchie Wildlife Refuge, United States Department of the Interior, to Milton B. Rice dated November 19, 1991.
27. Letter from Randy Cook, Refuge Manager, to Attorney Barrett Ashley dated January 13, 1993 (Exhibit 8 to Cook's deposition)
28. Letter from Roseanne R. Christ, Senior Realty Specialist, Refuges & Wildlife, Department of Interior to Milton B. Rice dated October 5, 1992.
29. Lower Hatchie National Wildlife Refugee
30. Quad Map (1965) (Exhibit 22 to Cook's Deposition)
31. Quad Map Q10 (1977) (Exhibit 24 to Cook's Deposition)
32. Quad Map Q10 (1994) (Exhibit 25 to Cook's Deposition)

33. Quad Map Q10 (1948) (Exhibit 20 to Cook's deposition)
34. Quad Map Q10 (1931)
35. Quad Map Q10 (1939)
36. Quad Map Q10 (1937)
37. Quad Map Q10 (1933)
38. Special Permit FA-92-03 issued to Milton Rice dated November 20, 1991.
39. Special Permit AH-92-05 issued to Elvy Rorie, Jr. dated November 20, 1991.
40. Special Permit No. 57817 issued to Elvy Rorie dated December 7, 1994.
41. Photographs (41-A through 41-T) of the real estate, road, fences and signs. (Exhibits 14 - 19 to Cook's deposition marked as Trial Exhibits 41-A - 41-I) (Trial Exhibits 41-J to 41-T attached to Pl's More Definite Statement)
42. Lower Hatchie NWR Boundary Line (Exhibit 4 to Cook's deposition)
43. Letter from Roseanne to Randy Cook dated January 8, 1993 (Exhibit 6 to Cook's deposition)
44. Letter to Barrett Ashley from Randy Cook dated January 11, 1993 (Exhibit 7 to Cook's deposition)
45. Map of Refugee Headquarters and surrounding area (Red X marked thereon) (Exhibit 12 to Cook's Deposition)
46. Milton Thornton Survey of October 1965 with attached plats (Exhibit 2 to Cook's Deposition)
47. Large Quad Map (1972) (Exhibit 23 to Cook's Deposition)
48. Special Warranty Deed from Westvaco Corporation to USA dated December 18, 1992 (Late Filed Exhibit 26 to Cook's Deposition)
49. Map published by the Mississippi River Commission 1891 (revised to 1902)
50. Large Plat of Tipton County, Tennessee, Inset to Atlas Sheet No. 23, Scale 1:20,000 (Exhibit 5 to Cook's deposition)
51. Large Plat (7/13/00) from http//tipton.bbusprod1.com/output/tipton_APP-01-PROD330813606035.png (Exhibit 13 to Cook's deposition)
51.A Business records of Ashley, Ashley & Arnold

## EXHIBITS OF DEFENDANT

52. 1901 Decree partitioning the Bacon property
53. Map attached to 1901 Decree partitioning the Bacon property
54. Special Use Permit No. HA-92-06 issued to Elva Rorie dated November 20, 1991

   Special Use Permit No. HA-92-03 issued to Milton Rice dated November 20, 1991 (See Exhibit 38 above)

   Special Use Permit No. HA-92-05 issued to Elva Rorie, Jr. dated November 24, 1991 (See Exhibit 39 above)

55. Special Use Permit No. HA-92-07 issued to James Wiseman dated November 20, 1991
56. Special Use Permit No. HA-92-   issued to William Tucker dated November 20, 1991

15

       Special Use Permit No. 57811 issued to Elvy Rorie dated July 12, 1994
       (See Exhibit 40 above)

57.    Special Use Permit No. 57815 issued to Elvy Rorie, Jr. dated July 26, 1993
58.    Special Use Permit No. 57817 issued to Elvy Rorie dated December 7, 1994
59.    Special Use Permit No. 57820 issued to Elvy Rorie, Jr. dated July 5, 1995
60.    Special Use Permit No. 42527-95036 issued to Elvy Rorie dated December 7, 1995
61.    Special Use Permit No. 57824 issued to Elvy Rorie, Jr. dated July 16, 1996
62.    Special Use Permit No. 57811 issued to Elvy Rorie dated July 12, 1993
63.    Special Use Permit No. _____ issued to Elvy Rorie dated June 6, 1997
64.    Special Use Permit No. 42527-001 issued to Chris Williams dated November 19,1999
65.    Special Use Permit No. _____ issued to O'Neal Tankersley dated November 14, 2002
66.    Special Use Permit No. 42575-0003 issued to O'Neal Tankersley dated December 12, 2002
67.    Special Use Permit No. 42575-0002 issued to James I. Burlison dated December 12, 2002.

## PLAINTIFFS' WITNESSES

Plaintiffs' witnesses that will or may be called to testify are:

James I. Burlison

Rodney L. Waits

Buford O'Neal Tankersley

Dan Douglas

Milton B. Rice

Cyburn H. Sullivan, III

Marvin L. Nichols

Randy Cook

Custodian of Records, Ashley, Ashley & Arnold Law Firm

Roseanne R. Christ

Custodian of Records, United States Department of Interior, as to all documents, records, correspondence, information and data concerning information of real estate transactions between

Defendant and Milton B. Rice and others and between Defendant and Cyburn H. Sullivan, III and others related to the Sullivan tract and the Rice tract between 1984 and 1994.

## DEFENDANT'S WITNESSES

Defendant's witnesses that will or may be called to testify are:

Randy Cook

James I. Burlison

Rodney L. Waits

Buford O'Neal Tankersley

Milton B. Rice

Cyburn H. Sullivan, III

Chris Sullivan

Marvin L. Nichols

## DEPOSITION TESTIMONY

Deposition of Randy Cook and exhibits (with exception of Ex. 3 thereto).

## ESTIMATED LENGTH OF TRIAL

It is anticipated that this matter can be tried in one day or two at the maximum.

## JURY OR NON-JURY TRIAL

This case is a non jury trial. Plaintiffs' proposed findings of fact and conclusions law are being submitted herewith. Defendant's proposed findings of fact and conclusions law are being submitted herewith.

## AMOUNT OF ASCERTAINABLE DAMAGES

The value of the loss of the use of Plaintiffs' property right of ingress and egress as may be allowable under 28 USC §2409a (b) and under the Court's inherent jurisdiction.

## NAMES OF ATTORNEYS INVOLVED

Attorney for the Plaintiffs:   Attorney for the Defendant:

J. Houston Gordon   Gary A. Vanasek

Copies of each counsel's letterhead is attached hereto.

## LIST OF EQUIPMENT NEEDED AT TRIAL

Easel, VCR to play deposition excerpts.

RESPECTFULLY SUBMITTED this _11_ day of _October_, 2005.

*[signature: Ju P. M'Call]*
U.S. Dist. Court
Oct. 18, 2005

LAW OFFICES OF J. HOUSTON GORDON

BY: _J. Houston Gordon by Gary Vanasek_
J. HOUSTON GORDON
Attorney for Plaintiffs
Suite 300, Hotel Lindo Building
114 West Liberty Avenue
P.O. Box 846
Covington, Tennessee 38019-0846
(901) 476-7100/telephone
(901) 476-3537/facsimile

_Gary A. Vanasek_
GARY A. VANASEK
Assistant U.S. Attorney
U.S. Department of Justice
200 Jefferson Avenue, Suite 811
Memphis, TN 38103
901-544-0563/telephone
901-544-4303/facsimile

18

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 62 in case 2:04-CV-02597 was distributed by fax, mail, or direct printing on October 18, 2005 to the parties listed.

---

J. Houston Gordon
LAW OFFICES OF J. HOUSTON GORDON
114 W. Liberty Ave.
Ste. 300
Covington, TN 38019--084

Gary A. Vanasek
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Honorable Jon McCalla
US DISTRICT COURT