**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | |
|---|---|
| JAMES I. BURLISON, RODNEY L. WAITS, and BUFORD O'NEAL TANKERSLEY, | ) ) ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| v. | )  No. 04-2597 Ml/P |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     **Defendant.** | ) |

---

**OPINION AND ORDER FOLLOWING NON-JURY TRIAL**

---

Plaintiffs bring this action pursuant to 28 U.S.C. § 2409a, the Quiet Title Act,[1] to quiet title to a purported easement over part of the Lower Hatchie National Wildlife Refuge located in Lauderdale County, Tennessee, which provides the only means of access to and from property held by Plaintiffs.[2]

The Court held a bench trial in this case on March 3, 2006. Plaintiffs were represented by J. Houston Gordon. The Government was represented by Gary Vanasek. At the trial,

---

[1] While Plaintiffs, in their Amended Complaint, stated that they bring this action pursuant to 28 U.S.C. § 2409 (Am. Compl. ¶ 12), the correct reference is 28 U.S.C. § 2409a.

[2] Section 2409a provides that "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a) (2000).

-1-

counsel made final arguments and reviewed submitted trial
exhibits (including maps) and deposition testimony.  For the
reasons set forth in this opinion, the Court finds that
Plaintiffs have a permanent easement of ingress and egress over
the Lower Hatchie National Wildlife Refuge.  Accordingly,
judgment is ENTERED in favor of Plaintiffs against the
Government.

I.   **FINDINGS OF FACT**

The instant lawsuit arises out of the Government's refusal
to allow Plaintiffs to traverse its tract of land in order to
access a public roadway.  The material facts are undisputed and
as follows:

The lands at issue lie near the convergence of the
Mississippi and Hatchie Rivers near the historic town of Fulton,
Tennessee.  The Government's property is situated north of the
Plaintiffs' property, a portion of which was acquired by the
Government from Cyburn and Chris Sullivan by warranty deed dated
May 31, 1985, and recorded at Book 250, Page 196 ("the Sullivan
tract") and another portion of which was acquired from Milton
Rice and others by warranty deed dated January 4, 1993, and
recorded at Book 331, Page 642 ("the Rice tract").  The Rice and
Sullivan tracts are part of the Lower Hatchie National Wildlife
Refuge ("the Hatchie Refuge"), which is a unit of the National

-2-

Wildlife Refuge System administered by the Fish and Wildlife
Service.  Plaintiffs own the Rorie tract, which is adjacent to
the Rice tract.  All three tracts are contiguous.  The Rorie
tract is the farthest south, the Rice tract is immediately north
of the Rorie tract, and the Sullivan tract is immediately north
of the Rice tract.

     Plaintiffs' tract of land, the Rorie tract, is landlocked.
The only access to the Rorie tract is by the road which passes
through the Hatchie Refuge on the lands formerly owned by
Sullivan and Rice ("the access road").  The access road provides
access to a public roadway called Old Fulton Road (also known as
Shoaf Road or Fort Prudhome Road) or to Highway 87.  The access
road traverses Defendant's properties and travels along a river
bluff where the Mississippi River once flowed.  Plaintiffs and
their predecessors in interest have accessed their lands solely
by use of the access road.

     Prior to December 17, 1887, Plaintiffs' and Defendant's
lands were part of lands held in common unity of ownership by A.
Lea & Co.  On March 17, 1888, the lands known as the Rice and
Rorie tracts were assigned to the Bacon family and severed from
the remaining lands (which included the Sullivan tract).  In
1901, the Rice and Rorie tracts were partitioned to M. M.
Lindsey.  In 1928, the Rice and Rorie tracts were reunified when

-3-

Myra Bacon Rice acquired the deed to both.  In September 1941,
Myra Bacon Rice and her husband deeded the Rorie tract to Elvy
and Lena Rorie.  From 1941 forward, Plaintiffs and their
predecessors in interest used the access road through
Defendant's property to access the public roadway.  Eventually,
the Rorie tract passed to the three children of Elvy and Lena
Rorie.  In August and November, 2002, two of the three Rorie
children deeded their interests in the Rorie tract to
Plaintiffs.  Accordingly, Plaintiffs hold a two-thirds undivided
interest in the original Rorie tract as tenants in common.

The Government purchased the Sullivan tract by deed dated
May 31, 1985.[3]  That deed states that "such land is unencumbered
SUBJECT, HOWEVER, to the following: (1) Existing easements for .
. . public highways and roads . . . ."  (Pls.' Trial Ex. 79 at
3.)

In 1992, the Government and the Rice family entered into
negotiations regarding the sale of the Rice tract.  On September
2, 1992, the Defendant and the Rice family entered into an
Agreement for the Purchase of Lands.  Paragraph 2 of the
Agreement states:

---

[3] There is some dispute as to the full extent of the Sullivan
tract.  It appears that the land conveyed to the Government by
the Sullivans included land known as the Slattery lands.
However, it appears that the Slattery lands were never owned by
A. Lea & Co., and that the Slattery lands became part of the
Sullivan tract at some time after the partition in 1888.

-4-

> The vendors agree that they have full right, power, and authority to convey, and that they will convey to the United States the fee simple title thereto clear, free, and unencumbered, except <u>subject to the following easements or reservations</u>:
>
> <u>Existing easements</u> for canals, ditches, flumes, pipelines, railroads, <u>public highways and roads</u>, telephone, telegraph, power transmission lines and public utilities.

(Pls.' Trial Ex. 6)(emphasis added).  By warranty deed dated January 4, 1993, the Rice family sold the Rice tract to the Government.  The deed explicitly states that it is "SUBJECT, HOWEVER, to existing easements for . . . public highways and roads . . . ."  (Pls.' Trial Ex. 76 at 2.)

Before delivery of the Rice deed, Barrett Ashley, the Rice family's attorney, wrote a letter dated January 11, 1993, to Roseann Christ, Senior Realty Specialist of the Department of the Interior, which stated:

> At that time [in the summer of 1992], we discussed the Rice family's <u>concern that the access road to the Rorie tract remain an easement or reservation</u> as to the title.  You agreed that would be done.
>
> Accordingly, we have construed Paragraph 2 of the Sales Agreement, which refers to easements or reservations, to include that particular access road in the reference in that language to "roads" . . . .
>
> Upon this understanding, Mr. Rice has authorized the delivery of the deed conveying this property to the United States Department of the Interior . . . .

(Pls.' Trial Ex. 7)(emphasis added).  Randy Cook, a Refuge
Manager of the Fish and Wildlife Service, wrote Mr. Ashley a
letter dated January 13, 1993, which stated in its entirety:

> It is the policy of the U.S. Fish and Wildlife Service
> to afford inholders with reasonable access to their
> property.  We do not view the deed from Mr. Rice to
> the United States as infringing upon any right that
> might be held by Elvy Rorie, Jr.  We have discussed
> this with our Counsel . . . and he has advised us that
> this letter should serve to satisfy Mr. Rice's
> concerns.  Therefore, we are hopeful that Mr. Rice
> feels confident that this matter is resolved.

(Pls.' Trial Ex. 27)(emphasis added).

Before 2002, the Government and its agents did not attempt
to prohibit the owners of the Rorie tract from accessing their
property over the access road.  In 1991, the Government issued
Special Use Permits to the Rories and Milton Rice, along with a
letter that explained that "the key described on the permit will
be issued to you for access to your inholding south of the Lower
Hatchie Wildlife Refuge."  (Pls.' Trial Ex. 26.)  The letter
continued: "We ask you to use discretion in lending the key to
other parties using the refuge as access to the inholding."
(Id.)

In 2003, the Government acted to deny to Plaintiffs access
to their property.  The Government locked a gate across the
roadway, denied Plaintiffs a key to the gate or permission to
use the access road between November 15 and March 15 of every

-6-

year, and told Plaintiffs that they could only use the access road when given specific permission.  Plaintiffs filed the instant action on August 2, 2004.

Plaintiffs contend that they have an easement over the access road and allege that they have proven the existence of an easement under the following theories: (1) implication, (2) necessity, (3) prescription, (4) reservation, and (5) express grant.  Plaintiffs seek a declaration from this Court as to the existence of an easement.  In addition, Plaintiffs seek an injunction barring the Government from interfering with their use of the access road.  The Government denies the existence of an easement and alleges that whatever rights Plaintiffs and their predecessors in interest have exercised have been solely by the permission of previous owners or through the exercise of a personal license.  Further, the Government contends that any state property rights are preempted by federal law.

## II.  CONCLUSIONS OF LAW

The United States has waived its immunity to suit in actions brought against it to quiet title to land under the Quiet Title Act, 28 U.S.C. § 2409a ("QTA").  California v. Arizona, 440 U.S. 59, 65 (1979).  The QTA provides "the exclusive means by which adverse claimants [can] challenge the United States' title to real property."  Block v. N.D. ex rel.

Bd. of Univ. & Sch. Lands, 461 U.S. 273, 286 (1983).  The QTA "provides the landowner with a declaration of title and recovery of the land."  LaFargue v. United States, 4 F. Supp. 2d 580, 586 (E.D. La. 1998).  Plaintiffs have appropriately brought suit under the QTA to quiet title to the purported easement over the access road.

## A. Existence of an Easement

"An easement is a right an owner has to some lawful use of the real property of another."  Pevear v. Hunt, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996).  Easements are either appurtenant, in which case they pass with title to land, or they are in gross. See Lynn v. Turpin, 215 S.W.2d 794, 795 (Tenn. 1948).  "If there be a dominant tenement to which the easement may conveniently attach and if the easement will add to the proper use and enjoyment of such dominant tenement, then the questioned clause will be construed to create an easement appurtenant, rather than a personal license or easement in gross."  Id. at 796 (citations omitted).

### 1. Common Law Easement

Plaintiffs first contend that they are entitled to a common law easement.  Under Tennessee law, an easement by implication is created where the following elements exist:

(1) A separation of the title; (2) Necessity that, before the separation takes place, the use which gives

-8-

rise to the easement shall have been so long continued
and obvious or manifest as to show that it was meant
to be permanent; and (3) Necessity that the easement
be essential to the beneficial enjoyment of the land
granted or retained.

Johnson v. Headrick, 237 S.W.2d 567, 570 (Tenn. Ct. App. 1948).

A second type of common law easement is an easement by
necessity.  "On a conveyance which leaves the land conveyed or
retained surrounded by the land of the grantor or grantee and
third persons, a way of necessity is implied in favor of the
landlocked parcel."  28 C.J.S. Easements § 37, cited in Morris
v. Simmons, 909 S.W.2d 441, 444 (Tenn. Ct. App. 1993).  As the
Tennessee Court of Appeals has stated, a way of necessity

arises where there is a conveyance of a part of a
tract of land of such nature and extent that either
the part conveyed or the part retained is shut off
from access to a road to the outer world by the land
from which it is severed or by this land and the land
of a stranger.  In such a situation there is an
implied grant of a way across the grantor's remaining
land to the part conveyed, or conversely, an implied
reservation of a way to the grantor's remaining land
across the portion of the land conveyed.

City of Whitwell v. White, 529 S.W.2d 228, 233 (Tenn. Ct. App.
1975)(quoting 25 Am. Jur. 2d Easements and Licenses).

In contrast to an easement by implication, "which requires
proof of a pre-existing route of access at the time of
severance, an easement by necessity allows for the establishment
of an easement of way where one previously never existed."

Cellco P'ship v. Shelby County, 172 S.W.3d 574, 591 (Tenn. Ct. App. 2005)(citations omitted).  In order to create an easement by necessity:

> 1) the titles of the two tracts in question must have been held by one person; 2) the unity of title must have been severed by a conveyance of one of the tracts; 3) the easement must be necessary in order for the owner of the dominant tenement to use his land with the necessity existing both at the time of the severance of title and the time of exercise of the easement.

Id. at 592; see also 94 A.L.R.3d 502.

One element necessary to the existence of both an implied easement and an easement by necessity is "unity of title to both tracts at the date of the supposed conveyance of the dominant right."  Line v. Miller, 309 S.W.2d 376, 377 (Tenn. Ct. App. 1957)(citing Johnson, 237 S.W.2d at 569-70).  Unity of title is required immediately before severance.  94 A.L.R.3d 502.  "A unity of title of both tracts involved in a claim of a way of necessity at some former time appears to be the foundation of the right.  A way of necessity cannot legally exist where neither the party claiming the way nor the owner of the land over which it is claimed, nor anyone under whom they or either of them claim, was ever seized of both tracts of land at the same time."  Bowles v. Chapman, 175 S.W.2d 313, 314 (Tenn. 1943)(quoting 17 Am. Jur. Easements § 49).

In the instant matter, it appears that an easement by necessity or an easement by implication may exist.  It is undisputed that the use of the access road is "essential to [Plaintiffs'] beneficial enjoyment of the land" and is "necessary in order for [Plaintiffs] the owner[s] of the dominant tenement[,] to use [their] land."  It is also undisputed that the majority of the lands at issue was once held in unity of title.  As noted above, Plaintiffs' and the Government's land was initially held in unity of title by A. Lea & Co.  After the partition of the Sullivan tract from the Rice and Rorie tracts in 1888, an easement would have been created over the Sullivan tract in favor of the Rice and Rorie tracts. Subsequently, when the Rice and Rorie tracts were severed in 1941, the lower half of the easement would have been created over the Rice tract in favor of the Rorie tract.

However, there is a question of fact as to whether unity of title existed over a portion of the road that traverses a tract of land known as the Slattery lands.  The parties concede that the Slattery lands were never owned by A. Lea & Co.  While it is not completely clear to the Court, it appears that after the partition, the Slattery lands became part of the Sullivan tract, which were later deeded to the Government.  The easement that the Rice and Rorie tracts acquired over the remainder of the

-11-

Sullivan tract appears not to include an easement over the Slattery lands.

Plaintiffs contend that the Slattery lands cannot disrupt unity of title; however, they offer no law in support of their argument.  Because it appears that the access road (and the requested easement) traverses the Slattery lands, that the Slattery lands were never held by A. Lea & Co., and that the Government currently owns the Slattery lands, it is unclear whether this would defeat unity of title.  Further, the Court notes that there has been no direct evidence presented as to whether the access road existed in 1888 at the time of the partition such to demonstrate the requisite longstanding use for an easement by implication.  However, the Court need not resolve these dilemmas because the Court finds that Plaintiffs hold an easement by reservation.

### 2. Express Easement by Reservation

Parties may create an express easement through a deed.  The deed may grant the easement to the purchaser, or may reserve the easement to the grantor.  See Bradley v. McLeod, 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998)("Parties may create an easement by express grant or reservation by including language in their deed reserving for certain identified parties a limited right to use some or all of the land conveyed.").  Further, a grantor may

vest property rights in a third party even though the beneficiary is a stranger to the deed. Minton v. Long, 19 S.W.3d 231, 239 (Tenn. Ct. App. 1999). "If the easement is claimed under a grant, the extent of the easement is determined by the language in the grant." Foshee v. Brigman, 129 S.W.2d 207, 208 (Tenn. 1939); see also Mitchell v. Chance, 149 S.W.3d 40, 44 (Tenn. Ct. App. 2004).

The Tennessee Supreme Court has noted that "the intention of the parties is controlling" in determining the existence of an easement. Lynn, 215 S.W.2d at 796. The court should first look at the words of the deed, see Hutchinson v. Board, 250 S.W.2d 82, 84 (Tenn. 1952), and then consider the words in the context of the deed as a whole, Collins v. Smithson, 585 S.W.2d 598, 603 (Tenn. 1979).

> [W]here the meaning of the instrument is doubtful, the rights of the parties are to be determined by the rule of reason rather than by some technical rule of property law, and in such a case the court may consider the surrounding circumstances at the time the instrument was executed, the situation of the parties, and any practical construction of the instrument given by the parties themselves in determining their intention.

28A C.J.S. Easements § 146 (1996), cited in Cellco P'ship, 172 S.W.3d at 595.

Finally, an express easement must comply with the statute of frauds. Cellco P'ship, 172 S.W.3d at 593. The Tennessee

-13-

statute provides that "[n]o action shall be brought . . . [u]pon any contract for the sale of lands . . . unless the promise or agreement . . . shall be in writing, and signed by the party to be charged . . . ."  Tenn. Code Ann. § 29-2-101 (2003).

The Court finds that the Government's predecessors in interest expressly reserved an easement over the access road in favor of the Rorie tract.  Both the Rice and Sullivan deeds expressly condition the grant of title and state that "such land is unencumbered SUBJECT, HOWEVER, to the following: (1) Existing easements for . . . public highways and roads . . . ."  The plain language of each deed reserves an easement for any "existing easement" for "roads."  This language appeared in the Sullivan and Rice deeds, as well as in the Land Sale Agreement relating to the Rice tract.

Even if the language in the deeds is ambiguous, Plaintiffs have nevertheless met their burden of demonstrating the existence of an easement by reservation.  Under the doctrine of merger, an executory contract for the sale of real property merges into the deed which, absent fraud or mutual mistake, becomes the final contract which governs and controls.  City of Memphis v. Moore, 818 S.W.2d 13, 15-16 (Tenn. Ct. App. 1991).  "The law is well settled that all evidence of verbal negotiations and stipulations anterior to or contemporaneous

with the execution of a written instrument which contradict, alter or vary the terms of the written instrument is barred by the parol evidence rule, which is a rule of substantive law in Tennessee." First State Bank of Wayne County v. City & County Bank of Knox County, 872 F.2d 707, 712-713 (6th Cir. 1989)(quoting Marron v. Scarbrough, 314 S.W.2d 165, 181 (1958))(quotations and internal citations omitted).  However, "where there exists an ambiguity in a contract, parol evidence is admissible to explain the actual agreement." Jones v. Brooks, 696 S.W.2d 885, 886 (Tenn. 1985).  In interpreting a contract or deed, "[t]he intention of the parties is the determinative factor, which may be found in the contract itself and the circumstances surrounding the parties to the agreement." La Rue v. Green County Bank, 166 S.W.2d 1044, 1048 (Tenn. 1942). While "parol evidence cannot be admitted to contradict or vary the terms or to enlarge or diminish the obligation of a written instrument or deed," Clayton v. Haury, 452 S.W.2d 865, 867-68 (Tenn. 1970), the parol evidence rule does not bar the use of extrinsic information to supplement the terms of a contract, Cagle v. Wheeler, 242 S.W.2d 338, 341 (Tenn. Ct. App. 1951).  In this instance, correspondence between the parties and their agents helps to explain their interpretation of the term "roads"

and whether they considered the access road to be an "existing easement."[4]

After the delivery of the deed, the Rices' attorney and the Government exchanged a series of correspondence surrounding the word "roads." Barrett Ashley, the Rices' attorney, explicitly stated that his clients interpreted the term "roads" in the deed to include the "particular access road" and that the Rices intended the access road to remain an easement. (Pls.' Trial Ex. 7.) Subsequently, the Government stated in a letter to Mr. Ashley that "[w]e do not view the deed from Mr. Rice to the United States as infringing upon any right that might be held" by Plaintiffs' predecessor in interest. The Government concluded by stating that the letter "should serve to satisfy Mr. Rice's concerns." (Pls.' Trial Ex. 27.)

The Government contends that it drafted the January 13 letter prior to receiving Ashley's January 11 letter. However, even if the Government's letter was not drafted in response to

---

[4] The Government filed a Motion in Limine to Exclude Oral Testimony and Documentary Evidence on February 21, 2006, and a Supplemental Memorandum in Support on February 23, 2006. In its motion, the Government seeks to exclude evidence of communications regarding the parties' understanding of the easement clause in the Rice deed as violative of the parol evidence rule and the statute of frauds. As noted above, the Court finds this evidence to be properly admissible, and further notes that the January 13 letter by the Government is also admissible into evidence as an admission. Accordingly, the Court DENIES the motion.

Ashley's letter, it demonstrates the Government's intent to allow the Rories and their successors in interest to use the road.  The January 13 letter, the Agreement for the Sale of Land, and the deed, taken together, clearly show that the parties intended to reserve an easement over the road in favor of the Rories and their successors.[5]

Accordingly, the Court finds that the Sullivan and Rice deeds each explicitly reserved an easement over the access road in favor of landowners of the Rorie property and that Plaintiffs hold an easement by reservation over the access road.[6]

**B. Regulation of State Property Rights under Federal Law**

The Government contends that even if an easement does exist under state law in favor of Plaintiffs, the Government has the power to regulate easements and the Fish and Wildlife Service has the authority to regulate a private easement encumbering the lands of a National Wildlife Refuge under 16 U.S.C. § 668dd(d). The Government's argument is without merit.

The Government has the right to regulate federal property. Under the Property Clause of the United States Constitution,

---

[5] The Rice and Sullivan deeds reserve "existing easements." Because the Court finds that the parties considered the access road to be an existing easement, the Court finds that the Rices and Sullivans reserved an easement over the access road.

[6] In light of the fact that Plaintiffs hold an easement by reservation, the Court will not consider whether Plaintiffs also hold their easement under the theory of prescription.

"[t]he Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."  U.S. CONST., Art. IV § 3, cl. 2.  The Supreme Court has held that "[t]he Property Clause is a grant of power only over federal property."  Kleppe v. New Mexico, 426 U.S. 529, 537-38 (1976).  Nonetheless, a private entity may hold an easement over federal property.  Patterson v. Buffalo Nat'l River, 76 F.3d 221, 227 (8th Cir. 1996).

The Fish and Wildlife Service administers the Hatchie Refuge as authorized under the National Wildlife Refuge System Administration Act of 1966, 16 U.S.C. § 668dd, as amended ("NWRSAA").  The NWRSAA provides that

> all lands, waters, and interests therein administered by the Secretary as wildlife refuges, areas for the protection and conservation of fish and wildlife that are threatened with extinction, wildlife ranges, game ranges, wildlife management areas, or waterfowl production areas are hereby designated as the "National Wildlife Refuge System" (referred to herein as the "System"), which shall be subject to the provisions of this section, and shall be administered by the Secretary [of the Interior] through the United States Fish and Wildlife Service.

16 U.S.C. § 668dd(a)(1) (2000).  Further, the Secretary of the Interior is authorized to "[i]ssue regulations to carry out this Act."  16 U.S.C. § 668dd(b)(5).  The NWRSAA then enumerates the authority delegated to the Secretary:

-18-

The Secretary is authorized, under such regulations as
he may prescribe, to --
. . . .
(B) permit the use of, or grant easements in, over,
across, upon, through, or under any areas within the
System for purposes such as . . . roads . . . whenever
he determines that such uses are compatible with the
purposes for which these [wildlife] areas are
established.

16 U.S.C. § 668dd(d)(1)(B).  The Secretary is also authorized to

"permit the use of any area within the System for any purpose,

including but not limited to hunting, fishing, public recreation

and accommodations, and access," 16 U.S.C. § 668dd(d)(1)(A), and

to purchase "lands or interests therein," 16 U.S.C. §

668dd(b)(3).

The question in this instance is whether Congress, under

the NWRSAA, has delegated to the Fish and Wildlife Service the

authority to terminate or regulate the use of existing easements

where the Government did not grant the easement or the dominant

tenement. "When construing a legislative enactment, we must give

effect to the intent of the legislature adopting the statute in

question." Chrysler Corp. v. C.I.R., 436 F.3d 644, 654 (6th Cir.

2006)(citing Broadcast Music, Inc. v. Roger Miller Music, Inc.,

396 F.3d 762, 769 (6th Cir. 2005)).  The court further explained

how to engage in statutory interpretation:

[W]e note that legislative intent should be divined
first and foremost from the plain language of the
statute.  If the "text of the statute may be read
unambiguously and reasonably," our inquiry is at an

> end.  Only when our reading results in ambiguity or
> leads to an unreasonable result, may we look to the
> legislative history.  Finally, we must construe a
> statute as a whole and, in so doing, we must strive to
> "interpret provisions so that other provisions in the
> statute are not rendered inconsistent, superfluous, or
> meaningless."

Id. at 654-55 (citations omitted).

The Court finds that under the plain language of the statute, the Fish and Wildlife Service may not regulate easements that predate the Government's acquisition of the servient tenement where the Government did not originally grant the dominant tenement or the easement.  Nowhere in the NWRSAA is there an explicit authorization of the Fish and Wildlife Service to regulate or terminate easements.  The closest that the NWRSAA comes to authorizing the regulation of easements is in § 668dd(d)(1)(B), which simply authorizes the Government to "permit the use of, or grant easements" when "compatible with the purposes" of the System.  16 U.S.C. § 668dd(d)(1)(B)

It appears to the Court that there are three types of easements contemplated by the statute, two of which are explicitly addressed by the text of the NWRSAA, and one which is not.  First, the Fish and Wildlife Service may grant new easements within the System that do not already exist.  16 U.S.C. § 668dd(d)(1)(B) (authorizing the Secretary to "grant easements").  For example, if an individual purchases property

-20-

that abuts a national wildlife refuge, the Government may grant
that individual an easement to pass through refuge lands.
Second, the Fish and Wildlife Service may "permit the use of"
easements that already exist within the System.  The Court finds
that the Fish and Wildlife Service's authority under this
provision extends to easements that the Government has granted
or easements attached to property that the Government granted.
However, the Court finds that the Government may not regulate
the use of the third type of easement -- existing easements
which the Government did not grant and where the Government did
not convey the underlying property.

No court of appeals has specifically construed the language
of the NWRSAA to determine whether it allows the Government to
regulate existing easements where the Government did not grant
the easement or the underlying land.  However, in construing
similar statutes in order to determine whether the Government
may regulate a landowner's property, courts of appeals
distinguish between property that either was originally conveyed
to the inholder by the Government or where the surrounding lands
were always held by the Government, and property that the
inholder took from a private individual and where the Government
later acquired adjacent properties.  See United States v.
Srnsky, 271 F.3d 595 (4th Cir. 2001)(finding Government unable

to require landowner to apply for permit to access inholding
where landowners' predecessors in interest deeded surrounding
lands to Government); <u>Vogler v. N. Alaska Envtl. Ctr.</u>, 859 F.2d
638 (9th Cir. 1988)(finding Government able to regulate
established right of way of owner of mining claims within
national park); <u>Clouser v. Espy</u>, 42 F.3d 1522, 1529-30 (9th Cir.
1994)(upholding Forest service regulations regarding access to
unpatented mining claims originally granted by the Government);
<u>Adams v. United States</u>, 3 F.3d 1254, 1260 (9th Cir.
1993)(holding that Forest Service must provide "reasonable
access" to landowners' property at all times and that landowners
must comply with "reasonable Forest Service rules and
regulations" where landowners' predecessors took from Nevada,
but where surrounding lands were always owned by the United
States), <u>principle reaffirmed in</u> 255 F.3d 787 (9th Cir. 2001)
("the Adamses' access to their property is subject to reasonable
regulation"); <u>McFarland v. Norton</u>, 425 F.3d 724, 727 (9th Cir.
2005)(noting that "landowner [claiming an easement] could
reasonably presume that the federal entity concerned has the
power to regulate" where landowner's predecessor in interest
took land pursuant to the Homestead Act); <u>Skranak v. Castaneda</u>,
425 F.3d 1213, 1216-17 (9th Cir. 2005)(discussing mining claims
patented by the United States and noting that "federal agencies

like the Forest Service often have regulatory powers over
easements and other property interests, including, presumably,
the ability to require permits and put conditions on use”);
United States v. Jenks, 22 F.3d 1513, 1518 (10th Cir.
1994)(requiring landowner whose predecessors in interest took
pursuant to the Homestead Act to apply for special use permit to
access inholdings), principle reaffirmed in 129 F.3d 1348 (10th
Cir. 1997)(“Nothing in the Homestead Act of 1862 suggests that
Congress intended to abrogate its right to regulate access over
roads located on federal lands.”); Mont. Wilderness Assoc. v.
U.S. Forest Serv., 496 F. Supp. 880, 889 (D. Mont. 1980)(holding
that railroad company’s right of access to its property across
federal lands “not absolute” where railroad’s predecessor took
lands pursuant to federal land grant).

In finding that the Srnsky’s lands were not subject to
federal regulation, and distinguishing Jenks and Adams from the
case before it, the Fourth Circuit noted:

> The Srnsky’s predecessors in interest, by contrast,
> did not take pursuant to a federal statute; rather,
> they deeded part of their land to the federal
> government.  We have only the deed to look to in
> determining the rights of the parties, and, absent
> federal legislation purporting to control
> interpretation of the deed, we are left with state
> law.

Srnsky, 271 F.3d at 604 (emphasis in original).  The court

further noted that "the government's position has no logical

stopping point" and "would wipe the National Forest System clean

of any and all easements, implied or express."  Id.

Accordingly, the Fourth Circuit held that any common law

easement that existed was not preempted by federal law, and

remanded for the district court to determine whether an easement

existed.  Just as in Srnsky, in the instant matter "[t]he United

States purchased this land [which the easement traverses]

directly from a private party . . . .  At the time of

conveyance, the land surrounding the inholding was not public

land."  See Srnsky, 271 F.3d at 600.

The Court's finding that the statute does not permit the

Government to regulate preexisting easements never owned by the

Government or easements appurtenant to land granted by the

Government is buttressed by the history and the Government's

role in promoting land use in this country.  In contrast to the

expansionary policies underlying land grants in the Western part

of the United States in order to promote settlement,[7] here,

---

[7] See, e.g., Jenks, 22 F.3d at 1515 (noting that dispute
regarding access "is the modern legacy of early congressional
enactments granting public land to private individuals to
promote the settlement of the western portion of the United
States."); Mont. Wilderness Assoc., 496 F. Supp. at 882-83
(discussing "substantial governmental inducement" to build

Plaintiffs and their predecessors in interest owned the lands at issue for more than one hundred years prior to the Government's acquisition of any surrounding lands.  Plaintiffs have a strong interest in the beneficial use of their property that is not counterbalanced by the Government's interests in regulating properties that it once granted to private individuals in order to promote expansion.

The NWRSAA's reference to "the System" lends further support to the Court's finding that the Government may not regulate Plaintiffs' easement.  As noted above, the statute specifically deals with easements within the System.  16 U.S.C. §§ 668dd(d)(1)(A), (d)(1)(B) (2000).  The easement at issue in the instant matter was never within the System.  The Government never held title to the easement or to the Rorie tract.  The Government cannot change the bundle of rights that Plaintiffs hold simply by subsequently acquiring surrounding properties.  Critically, subsection (c) of the NWRSAA specifically provides that "nothing in this Act shall be construed to authorize the Secretary to control or regulate hunting or fishing of resident fish and wildlife on lands not within the system."  16 U.S.C. § 668dd(c) (emphasis added).

---

railroads through "an enormous grant of public land" in order to lead to appreciation in value of retained federal lands).

In order to give effect to every word in the statute, <u>see</u> <u>Walker v. Bain</u>, 257 F.3d 660, 667 (6th Cir. 2001), the Court cannot find that the language under which the Secretary has the authority to "permit the use of or grant easements" permits the Secretary to terminate the use of an easement that predates the Government's ownership of the servient tenement.

The Court does not dispute that the Government may have the right to regulate areas adjacent to the easement.  For example, the Government may erect a fence along the easement to prevent others from entering.  See <u>Kleppe</u>, 426 U.S. at 538 (citing <u>Camfield v. United States</u>, 167 U.S. 518 (1897), for the proposition that "the Property Clause is broad enough to permit federal regulation of fences built on private land adjoining public land when the regulation is for the protection of the federal property.").  However, in the absence of explicit authorization by Congress, the Government's reach is not unlimited.  The Government may not limit Plaintiffs' ability to access their property at any time, or limit the access of Plaintiffs' guests.  See, e.g., <u>Adams v. United States</u>, 3 F.3d at 1260 (holding that Forest Service must provide landowners "reasonable access to the [landowners'] property <u>at all times</u>")(emphasis added).  If the Government wants to obtain absolute control over these property rights, it may acquire the

-26-

entire property or exercise its powers of eminent domain.  In the absence of such acquisition or exercise, the Government may not infringe upon Plaintiffs' right to access.

Accordingly, the Court finds that the Government may not regulate Plaintiffs' easement and may not require Plaintiffs to apply for a permit to utilize the access road.  The Court GRANTS Plaintiffs' motion for a permanent injunction enjoining the Government from interfering with Plaintiffs' use of the easement.[8]

## III. CONCLUSION

For the foregoing reasons, the Court finds and hereby DECLARES that Plaintiffs have an easement over the access road. Further, the Court hereby ENJOINS the Government from interfering with Plaintiffs' use of the access road.


ENTERED this 31st day of August, 2006.


/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE


---

[8] The QTA bars the issuance of a preliminary injunction in conjunction with any action brought under the QTA, 28 U.S.C. § 2409a(c), but does not prohibit other injunctive relief.